NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0509n.06

No. 13-4373

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 11, 2014
DEBORAH S. HUNT, Clerk

KEVIN M. SMITH                                    )
                                                  )
          Plaintiff-Appellant,                    )
                                                  )
v.                                                )          ON APPEAL FROM THE
                                                  )          UNITED STATES DISTRICT
                                                  )          COURT FOR THE
COMMISSIONER OF SOCIAL SECURITY                   )          NORTHERN DISTRICT OF
                                                  )          OHIO
          Defendant-Appellee.                     )
                                                  )
                                                  )

BEFORE:     ROGERS and KETHLEDGE, Circuit Judges; MALONEY, District Judge.[*]

          ROGERS, Circuit Judge.   Kevin Smith suffers from psychiatric illness aggravated by

substance abuse.  He was denied Social Security disability benefits because, although he is

disabled, his substance abuse contributed to the disability, and without the substance abuse he

would not meet the requirements for disability.  The magistrate judge upheld the agency's

decision, and the district court upheld the magistrate's decision, rejecting arguments that Smith

was denied a full and fair hearing, that the administrative law judge's decision was not supported

by substantial evidence, and that a remand was required to consider evidence that Smith's

counsel claimed the administrative law judge should have put in the record.  Smith argues on

appeal that the administrative law judge denied him a full and fair hearing by taking advantage of

his attorney's unfamiliarity with Social Security law, suppressing the full development of the

_____

[*] The Honorable Paul L. Maloney, United States District Judge for the Western District of Michigan, sitting by
designation.

record, and discrediting a witness's testimony. In addition, Smith contends that the administrative law judge's decision is not supported by substantial evidence, and must be overturned. Smith's arguments are without merit.

On October 29, 2007, Smith filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. R. 12, PageID #292. Two days later, he filed an application for Supplemental Security Income pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, R. 12, PageID #286. In both applications, Smith alleged a mental health disability beginning September 1, 1999. Both applications were denied initially and upon reconsideration. R. 12, PageID #177, 181, 184, 188. In May 2010, Smith was granted a hearing before an administrative law judge (ALJ), who heard testimony from Smith, Smith's mother, an impartial psychological consultant, and a vocational expert. Id., PageID #214.

Smith submitted medical evidence of hospitalization for mental health treatment from October 2004 to May 2010. R. 12, PageID #567-853. Smith was sexually abused when he was eight or nine years old. Id., PageID #567. The record before the ALJ showed a pattern of hospitalization due to delusions and hallucinations (Id., PageID #567), suicidal and homicidal thoughts (Id., PageID #797), severe depression (Id., PageID #621), psychosis (Id., PageID #700), and paranoia (Id., PageID #785). Smith also reported experiencing anxiety and poor sleep. (Id., PageID #567, 785). In 2004, Smith told Rescue Crisis Mental Health Services that he was using marijuana and alcohol, and that he had a history of using ecstasy, opium, and cocaine. Id., PageID #571. He was diagnosed with psychotic disorder, and alcohol and cannabis abuse. Id., PageID #573. Smith was given a prescription for antidepressant medication, and after readmission to the hospital five days later, prescriptions for additional antidepressant, mood-stabilizing, and anti-psychotic drugs. Id., PageID #636. In 2006, after using "cannabis, alcohol,

and cocaine," Smith entered the emergency room and reported that the preceding months "were the worst 2 months of my life depression wise." Id., PageID #621. He was diagnosed with cocaine-induced mood disorder with depressive features, cannabis and alcohol dependence, and antisocial personality disorder. Id., PageID #625. Smith's doctor assigned Smith a Global Assessment Functioning (GAF) score of 60, which indicates moderate symptoms or moderate difficulty in one of the following areas: social, occupational, or school functioning. Id.; *see also Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (DSM-IV). Smith was released with instructions to continue taking mood-stabilizing and sedative drugs, discontinue anti-psychotic medication, undergo anger management group treatment, and abstain from alcohol, caffeine, and all illicit substances. R. 12, PageID #625.

Between October 2007 and January 2008, Smith attended medication monitoring appointments. He reported in October that he had recently quit his job due to hallucinations and delusions, so his doctor adjusted his medication, and later placed him on a beta blocker, which significantly decreased Smith's hallucinations. Id., PageID #651, 653, 545. Smith reported feeling much better, and in January 2008, stated that his mood was very stable, his hallucinations extremely rare, and that he was moving to Columbus to live with his brother. Id., PageID #639, 636. During a medication management appointment in December 2008, Smith stated that he was experiencing delusions, increased psychosis, and mood instability. Id., PageID #714. Four days later, Smith was sent from the hospital to a treatment facility after he stopped taking his medications. Id., PageID #676. A staff member speculated that his symptoms had improved during his stay at the hospital because of medication that he was administered while there. Id. Smith told a psychiatrist that he had last used alcohol four or five months ago, and had last used cannabis one year ago. Id. Between January 2009 and March 2010, Smith presented himself for

medication management approximately once per month, and reported varying degrees of success with mood stability and depression. Id., PageID #700-713. In March 2010, Smith admitted to using marijuana, and said that it contributed to his paranoia. He also admitted using alcohol once or twice a week. Id., PageID #751. He was diagnosed with bipolar-type schizoaffective disorder and poly-substance dependence, and his GAF score was adjusted to 62. Id. In April 2010, Smith reported feeling better, but stated that "drugs and alcohol make[] things worse." Id., PageID #774. He was given a GAF score of 55. Id., PageID #780.

At the hearing, Smith's attorney informed the ALJ that he was also Smith's father. Id., PageID #102. The ALJ asked Smith's attorney whether there were any ethical rules that would prevent him from representing his son, and Smith's attorney replied that he was not aware of any. Id. The ALJ asked him whether he would be testifying, and he replied that he would not. Id., PageID #102-03. Smith's attorney stated that he had reviewed the exhibits filed in the case, and that he had no objection to admitting them into the record. Id., PageID #104.

Smith then testified that his last job was loading trucks for the U.S. Postal Service in 2007. Id., PageID #105. He testified that he had been sober since March 31, 2010, and that he had only used drugs and alcohol for two months in the past six years. Id., PageID #107. The ALJ questioned Smith about his periods of sobriety between 2005 and 2008, and Smith testified that he had used drugs and alcohol intermittently during that time. Id., PageID #109-10.

The ALJ noted that Smith's claim alleged a disability onset date of 1999, but told Smith's attorney that the ALJ only had medical records dating back to 2004. Id., PageID #111. Smith's attorney acknowledged that he did not have treatment records from before 2004. Id. The ALJ informed Smith's attorney that because the ALJ must base her decision "entirely on objective medical evidence, that includes treatment records," the earliest date she could consider for the

disability onset date was October 16, 2004. Id., PageID #112. Smith's attorney declined to amend the alleged onset date from 1999 to 2004, but stated that he would not object to the ALJ's basing "the onset date on when we have the first verifiable treatment records." Id.

Smith's mother testified about her son's discomfort in crowds and in social settings, as well as his disrupted sleeping patterns. Id., PageID #117-18. In addition, she talked about Smith's anxiety, forgetfulness, racing thoughts, and the "constant reassurance" required for him to complete basic tasks like cooking or doing laundry. Id., PageID #119. She also discussed the frequency with which Smith had attended Alcoholics Anonymous meetings. Id., PageID #120-21.

Psychologist Daniel Hamill, Ph.D., testified that, based on the medical records, there were "multiple substances abused in '06." Id., PageID #132. Dr. Hamill diagnosed "a combination of impairments," including "schizoaffective disorder, bi-polar type," and "poly-substance abuse in partial remission," as well as "non-compliance with treatment." Id., PageID #133. In combination, these impairments satisfied the criteria of Listing 12.04 for affective disorders under the Social Security disability evaluation criteria, but "titrating out poly-substance abuse in partial remission and the compliance issues," even though Smith still had "a significant schizoaffective disorder," Dr. Hamill stated, "I can't say that the listing would still be met or equaled." Id., PageID #133-34. Dr. Hamill testified that—assuming no substance abuse—the "functional limitations" anticipated for Smith included precluding tasks requiring attention to detail or complex tasks; limited contact with the general public; no more than occasional contact with co-workers; and no assembly or forced-paced tasks of any kind. Id., PageID #137.

Based on these criteria, the ALJ asked vocational expert Kay Gilreath a series of hypothetical questions about whether any jobs exist in the national economy that an individual

with Smith's limitations could perform. Ms. Gilreath testified that such a person could perform work as a groundskeeper, dishwasher, an office photocopy machine operator, and auto detailer, with over 12,000 jobs fitting one or more of those descriptions available in the state of Ohio. Id., PageID #157-58.

The ALJ asked Smith's attorney whether there was any additional evidence to be submitted, and the attorney responded that there was not. Id., PageID #161.

The ALJ denied Smith disability. The ALJ engaged in the proper five-step sequential analysis for determining whether Smith was disabled. R. 12, PageID # 84-92. She concluded that under Step 3 of the analysis, Smith was disabled because he had been diagnosed with schizoaffective disorder. Id., PageID #86-87. However, relying on the expert medical testimony of Dr. Hamill and the medical records before her, the ALJ determined that "[i]f the claimant stopped the substance abuse, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the [qualifying] impairments. . . ." Id., PageID #87. But even without substance abuse, Smith's "remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." Id. The ALJ proceeded to the remaining steps of the analysis to determine "whether the claimant is able to do any other work considering his residual functional capacity, age, education and work experience. If the claimant is able to do other work, he is not disabled." Id., PageID #83. Based on the vocational expert's testimony, the ALJ concluded that if Smith stopped abusing substances, even with his remaining limitations, "there would be a significant number of jobs in the national economy that the claimant could perform." Id., PageID #91. Therefore, Smith was found not disabled under §§ 216(i) and 233(d) of the Social Security Act. Id., PageID #92.

The magistrate judge recommended upholding the agency's decision denying Smith disability benefits. In determining that Smith was afforded a full and fair hearing, the magistrate judge balanced the claimant's ultimate "burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination" with "the ALJ's responsibility to provide a claimant with a full and fair hearing." R. 36, PageID #1054; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The magistrate judge distinguished *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983), in which this court determined that "the ALJ's failure to fulfill his duty to develop *fully* the record denied [the plaintiff] a full and fair hearing . . . The hearing was brief. It lasted a mere 25 minutes, and was fully transcribed in approximately 11 pages. In addition [plaintiff] possessed limited intelligence, was inarticulate, and appeared to be easily confused." R. 36, PageID #1055 (quoting *Lashley*, 708 F.2d at 1052). The magistrate judge noted that in Smith's case, "While ALJ Hunn's dialogue with Plaintiff was relatively brief . . ., it must be noted Plaintiff's answers to the ALJ's questions were not particularly helpful," and that "had Plaintiff's counsel felt the record was lacking after ALJ's questioning of Plaintiff, counsel had adequate opportunity to question his client and elicit further testimony," but declined to do so. Id., PageID #1055. Unlike the plaintiff in *Lashley*, Smith did not appear confused, his hearing lasted an hour and a half, and unlike in *Lashley*, Smith was represented by counsel during the hearing. Id., PageID #1056. The magistrate judge found Smith's remaining claims—that the ALJ failed to gather relevant evidence; that the ALJ misled Smith as to the evidence she would request at the hearing; that the ALJ misled Smith as to the evidence on which she would base her decision; that the ALJ selectively evaluated the evidence; and that the ALJ wrongfully discredited the testimony of Smiths' mother—were without merit, reasoning as follows. Id.,

PageID #1056-57. The ALJ fulfilled her duty to acquire relevant evidence, a burden that ultimately falls on the claimant. Id., PageID #1057. Smith provided no evidence for his blanket assertion that the ALJ failed to inform Smith or his counsel of her intention to inquire of and consider Smith's substance use and sobriety dates, and Smith (and his counsel) should have known that this inquiry would be relevant to a claim for disability benefits. Id. In addition, the ALJ accorded Smith's mother's testimony proper deference in the context of evaluating Smith's residual functional capacity if he were to cease using drugs and alcohol. Social Security regulations do not require the ALJ to rely on evidence from non-medical sources, but do require her to consider evidence and testimony from acceptable medical sources, like Dr. Hamill. Id., PageID 1060; 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1513(d)(4). Finally, the magistrate judge denied Smith's Motion to Remand for failure to incorporate the medical records and treatment notes of Dr. Nancy Carroll and Rescue Crisis, which Smith alleged prevented a fair determination of his claim. Id., PageID #1061. Smith failed to show good cause for his failure to incorporate these documents into the record. Id.

The district court rejected Smith's three objections to the magistrate's recommendation, finding that the ALJ afforded Smith a full and fair hearing; that the ALJ's decision was properly supported by substantial evidence; and that remand was unwarranted. R. 40, PageID #1095. The district court reasoned as follows. Smith conceded that "[he] is not suggesting that he was owed a heightened duty." Id., PageID #1097. Accordingly, the ALJ was not required to assume the role of counsel and aid Smith in developing the record and presenting evidence. Id. Smith offered no evidence to support his claim that the ALJ misled him about the relevance of his drug use: "Smith's drug abuse was not a hidden fact, unapparent to Smith's counsel; rather the drug addiction was an additional diagnosis which Smith's counsel reasonably should have expected to

be within the scope of ALJ Hunn's questioning." Id. The district court agreed with the magistrate judge's determination that the ALJ did not take advantage of Smith's counsel's unfamiliarity with Social Security proceedings, nor did she demean Smith, his mother, or his father. Id., PageID #1098. The district court noted that the ALJ was not required to consider testimony from sources other than a medical consultant or other program physician to determine Smith's residual capacity, and so the fact that she used Smith's mother's testimony in what Smith deemed to be a limited (and derisive) manner does not support a conclusion that the ALJ denied Smith a full and fair hearing. Id.

The district court concluded that the ALJ's decision was supported by substantial evidence. Id., PageID #1099. The court reasoned that the ALJ had carefully followed the required five-step analysis and relied on Dr. Hamill's expert testimony in determining that Smith's impairments met the requirements for being disabled when he was using drugs and alcohol, but not when he was sober. Id. The district court rejected Smith's argument that the ALJ should not have relied on his drug abuse and noncompliance with treatment because they are "natural consequences of his schizoaffective disorder and are not a contributing factor material to his disability." Id., PageID #1100. In compliance with the Social Security Regulations, the ALJ was entitled to rely on Dr. Hamill's testimony, as well as on the testimony of the vocational expert, in determining that Smith was impaired but not disabled when he complied with his prescribed treatment and did not use drugs or alcohol. Id. Finally, the district court noted that the magistrate judge correctly denied Smith's motion for remand because, "It is Smith's burden to furnish all necessary and relevant medical evidence, . . . and he may not fail to initially submit evidence and then claim the Commissioner caused him to rely on an incomplete

record. 20 C.F.R. § 404.1512(a)." Id., PageID #1101. The court concluded that Smith did not establish good cause for failing to do so. Id.

On appeal, Smith reiterates variants of the claims that he raised before the district court: 1) that the ALJ did not afford Smith a full and fair hearing; 2) that her decision was not properly supported by substantial evidence; and 3) that Smith's motion for remand was improperly denied. Smith also argues that substance abuse should not preclude a disability finding if the substance abuse is caused by the underlying psychiatric condition.

Smith was afforded a full and fair hearing. Smith conceded that the ALJ did not owe him a heightened duty, R. 40, PageID #1097, and as the district court noted, "Smith's drug abuse was not a hidden fact, unapparent to Smith's counsel." Id. The ALJ did not "conduct herself in a combative and derisive manner," nor did she "discredit" Smith's mother's testimony; instead, the ALJ considered Smith's mother's testimony in the context of Smith's impairments that limit the type of work he is able to perform. Id., PageID #1098. Smith ignores the fact that the ALJ was not required to consider Smith's mother's testimony at all. 20 C.F.R. § 404.1513(d)(4).

As the district court noted, the ALJ's decision was supported by substantial evidence and was in compliance with Social Security regulations. R. 40, PageID #1100. The ALJ carefully followed the five-step analysis that is required for determining whether Smith is disabled, which includes an assessment of factors (such as drug and alcohol use, as well as noncompliance with treatment) that could contribute to the alleged disability. 20 C.F.R. § 404.1535(a). The ALJ based her determination on objective medical evidence in the record, and on the testimony of medical and vocational experts.

For the reasons given by the district court judge, Smith's Motion for Remand was properly denied. Smith argues that the ALJ should have allowed him to submit additional

evidence in order to establish an earlier onset date for his disability, Appellant Br., at 9, but he has offered no good reason for failing to include additional evidence in the record. In addition, at the end of the hearing the ALJ asked Smith's attorney whether there was any additional evidence that should be submitted, and the attorney responded that there was no additional medical evidence, and that "everything was submitted by fax to [the ALJ's] office." R. 12, PageID #161.

Smith's final argument—that the ALJ should not have disqualified him from receiving benefits due to his drug and alcohol abuse because his schizoaffective disorder caused him to abuse drugs and alcohol—is similarly without merit. Appellant Br., at 54-56. Because there was "medical evidence of . . . drug addiction or alcoholism," the ALJ was required by law to "determine whether [Smith's] drug addiction or alcoholism [was] a contributing factor material to the determination of disability." *See* 20 C.F.R. § 404.1535(a). The statute does not create exception based on the cause of the addiction. Moreover, Smith's sub-argument that his noncompliance with treatment was also a result of his impairments is not supported by any medical evidence before the ALJ.

Because the ALJ did not "fail[] to apply the correct legal standards," and did not "ma[ke] findings of fact unsupported by substantial evidence in the record," *Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007), the decision of the district court is AFFIRMED.